SAMUEL CROCKER & another *vs.* MERCY F. THOMPSON

In the trial of a real action brought by the assignee of a mortgage against a stranger in
   possession, the production, by the tenant, of the notes which the mortgage was given
   to secure, does not warrant a presumption that the mortgage has been discharged,
   when no discharge is shown, and when the facts of the case strongly tend to prove,
   that the notes could not have been paid to any one who was a lawful holder thereof,
   and an assignee of the mortgage.

THIS was a writ of entry to recover a tract of land in Mid-
dleborough.    The demandants counted on their own seizin, and
a disseizin by the tenant and Abigail W. Thompson, who died
after this suit was commenced, having devised all her real estate
to the tenant.    There was a disclaimer of part of the premises
demanded in the writ, and issue was joined on the plea of *nul
disseizin* as to the residue, consisting of about thirty-two acres,
and a dwellinghouse thereon.

The trial was had before *Morton* J. who made the following
report thereof :

It was proved, that on the 15th of November 1828, Thomas
Darling conveyed the demanded premises to Jacob Thompson.

father of said Mercy F. and Abigail W., in fee simple, by deed of release, and the same day said Jacob conveyed the same to said Darling in fee and in mortgage, and the deed was recorded January 5th 1829. On the 27th of July 1830, said Darling, by deed of that date, assigned and conveyed to the demandants the mortgage aforesaid, with all his right and interest in the premises.

At the May term 1832, of this court, for the county of Plymouth, the demandants recovered conditional judgment against said Jacob for the demanded premises, and the condition not having been complied with, a writ of possession issued thereon, May 20th 1833, and by virtue thereof, September 23d 1833, the officer, to whom it was directed, caused the demandants to have possession of the demanded premises. That action was commenced April 25th 1831. Said Jacob being afterwards found in possession of the premises, February 1836, a complaint was made against him by the demandants, under *St.* 1825, *c.* 89 ; and at the December term 1836, of the court of common pleas, the demandants recovered judgment against him for the possession of the demanded premises. The present suit was commenced September 16th 1837.

It further appeared, that one portion of the demanded premses, the house and twelve acres of the land, was conveyed by said Jacob to Allen Richmond, by deed of April 17th 1811, and that said Richmond conveyed the same to said Darling, in fee and in mortgage, October 12th 1813. As to the other portion of the premises, about twenty acres, it appeared that on the 28th of July 1812, they were conveyed by said Jacob to Benjamin Parsons, in fee and in mortgage, and that said Parsons, on the 23d of December 1814, assigned and conveyed the same to said Darling, with all his interest therein. It did not appear that said Parsons or Darling ever had taken possession of the mortgaged premises.

The tenant showed the following transactions : October 14th 1815, a deed of said Richmond's right of redemption from Nathaniel Wilder, a deputy sheriff, to Abiel Washburn : November 5th 1818, a release thereof from said Washburn to Bradford Harlow : July 10th 1832, a release from said Harlow to

said Abigail W. Thompson and Mercy F. Thompson, Eliza A. Thompson and Juliet Thompson, all daughters of said Jacob Thompson. The tenant also showed a judgment and execution in favor of Freeman Waterman (father-in-law of said Jacob) against said Jacob, and a levy of said execution on said twenty acres, December 21st 1815 : Also a deed from Henry Pope, administrator of the estate of said Freeman Waterman, in pursuance of a license granted April 2d 1833, conveying all the right and interest of the said Freeman Waterman to Jacob Thompson 2d, for the consideration of five dollars, the date of which is May 14th 1833, the acknowledgment March 22d 1834, and the record April 1838 : And also a deed, signed by said Jacob 2d, purporting to convey the same to the tenant, for the same consideration, dated November 10th 1836, acknowledged January 16th 1837, and recorded April 11th 1838.

Respecting the deeds produced by the tenant, the following facts appeared : Said Jacob, the father, contracted with said Washburn for said right of redemption, and, by his request, said Washburn first made a deed thereof to said Freeman Waterman, which said Jacob afterwards gave up to said Washburn, and had said deed made to said Harlow ; and by said Jacob's request, said Harlow made said deed to said Abigail W. and others ; said Harlow not having paid or received any consideration. There was no evidence of the delivery of said deed by said Harlow to said Abigail, or to any of said grantees therein named, except their production in court ; and it was proved that said Abigail, on " being served with a notice in respect to this action, declared in presence of her father, that she never had any thing to do with the business, and never would have."

Neither said Washburn nor said Harlow ever redeemed the premises.

Said Jacob Thompson 2d did not attend the auction when said Freeman's said right was sold: January 16th 1837, said Jacob Thompson, the father, showed him said deed of said Pope (said grantee never having seen the deed before) and also a deed from said Jacob 2d to said Mercy F., which said Jacob 2d read and then signed and acknowledged. Said Jacob, the

father, took away both these deeds, and nothing further was proved respecting them, until their production in court. Said Freeman's said right was bid off at said Pope's auction, by Reuben Thompson, for five dollars paid by him, and said Jacob, the father, contracted with said Reuben therefor ; and on said Jacob 2d signing said deed, said Reuben received a note of hand, purporting to be signed by said Abigail W., for ten dollars, which said Bradford Harlow afterwards paid out of property of said Abigail's in his hands. Said Jacob Thompson 2d never paid or received any consideration ; and he stated that all he had done in regard to the land was done at the request of Jacob Thompson, who about a year before asked him if he would take a deed and give one, to which he answered, he did not know but he would.

The tenant's counsel produced the notes of hand mentioned in the condition of said mortgages, and contended that it should therefore be presumed that the mortgages had been redeemed.

On the margin of the record of said mortgage of Richmond to Darling is the following entry ; " May 15. 1832. Then I, Jacob Thompson, having purchased the within mortgage, and having received the full consideration therefor, do hereby discharge and quit my claim to the same, as witness my hand. JACOB THOMPSON. Attest — R. Cotton, Register."

Said Jacob, the father of said Abigail and Mercy, has lived on the demanded premises for the last fifteen years, except when dispossessed as aforesaid ; and one or other of his said daughters has usually lived in the house with him : Said Richmond left the premises eighteen or twenty years ago.

The tenant was defaulted and the case reserved. On the above facts, judgment to be entered on the default, or the demandants to be nonsuit, or a new trial to be ordered, as the opinion of the whole court may be in the premises.

This case was argued at the last October term

*W. Baylies & Eddy*, for the demandants.

*Coffin & S. Miller*, for the tenant.

SHAW, C. J. The dates and names mentioned in this case are so numerous and complicated, that there is great difficulty

in acquiring a full and discriminating comprehension of all the facts upon which the decision must depend.

In the first place, it seems to us that the demandants have clearly shown a good *primâ facie* title to the whole of the demanded premises. It appears that Jacob Thompson has lived on those premises, for the last fifteen years, except when dispossessed by the demandants ; and although one or more of his daughters usually lived with him, which might avail them, if they had a good title, as evidence of possession, to many purposes ; yet it shows their father also in possession. He was thus in possession in 1828, November 15th. On that day Darling conveyed the premises to Jacob Thompson in fee, and on the same day Thompson mortgaged them back to Darling. If Thompson had no title before, and took a title by force of this deed from Darling, the simultaneous deed back to Darling revested the conditional fee in him. Darling assigned the mortgage to the demandants, and they brought their action upon it, as such assignees, against Thompson, who was both mortgagor and tenant in possession, and obtained a conditional judgment. On his failure to perform the condition, they took their writ of seizin and entered and retained possession, except when unlawfully trespassed upon by Thompson, more than three years, and so acquired a *primâ facie* absolute title. This title must prevail, unless a better title is established, on the part of the tenant. This she attempts to do, by the conveyances given 'n evidence. As she claims the estate in two parcels, under distinct titles, it will be necessary to examine the title to each parcel separately.

And first as to the house and twelve acres. It appears that the whole of this estate was formerly the property of Jacob Thompson. On the 17th of April 1811, Jacob Thompson conveyed the house and twelve acres to Allen Richmond in fee. Richmond thus appears to have been the absolute owner for two years and more, when, on the 12th of October 1813, he mortgaged tne same to Thomas Darling. This, we are to presume, was a mortgage to secure the payment of a certain note ; but it is not distinctly stated, except afterwards by implication.

In this state of things, Richmond was the mortgagor, and had an equity of redemption ; and Darling was mortgagee.

The tenant then relies upon these facts : That Richmond's equity of redemption was taken in execution, and by the officer sold to Abiel Washburn ; that afterwards a release was given by Washburn to Bradford Harlow ; and that in 1832, Harlow conveyed, by release and quitclaim, to the four daughters of Jacob Thompson, of whom the surviving tenant is one.

Suppose all these conveyances were regular, which we need not now stop to inquire, the tenant could only claim to have a right of redemption. Darling was mortgagee. His estate, as such, passed to Thompson by the conveyance of 1828, and through him to the demandants. Supposing the estate created by that original mortgage, from Richmond to Darling, to continue in force up to the time when Darling conveyed in fee to Thompson in 1828, then by Thompson's mortgage back to Darling and the assignment of the same mortgage to the demandants, they stand in the character of mortgagees, and the tenant — supposing she has established a regular title, by mesne conveyances, to the equity of redemption — in the character of mortgagor. But as between mortgagor and mortgagee, the former has no fee, no legal estate, but only an equitable right. In a real action, where the legal title is in question, the mortgagor or his assignee cannot resist the title and claim of the mortgagee.

But then it is contended, that the estate has been actually redeemed from the original mortgage of Richmond to Darling, and the title, created by that mortgage-deed, extinguished ; so that what was, in its creation, a right of redemption, has become, by an actual redemption, a legal estate. This would be true, if such a discharge and extinguishment of the mortgage estate were proved.

The ordinary mode of proving a redemption, is either 1st. by a release from the mortgagee, or his assignee, to the mortgagor, or his assignee in fact or in law, having a right to redeem ; or 2d. by a similar discharge on the margin of the registry of deeds ; or 3d. by a decree on a bill to redeem. Neither of these is offered on the present occasion. But a presumption is

relied on. There is no *legal* presumption in the case. It must therefore be a presumption of fact, from the evidence.

In the first place, it is not only not to be presumed that Richmond redeemed, but the contrary is manifest. His right of redeeming was the very thing sold ; it was this, and this only, which Washburn, Harlow and the tenant acquired. It was all they could acquire under an official deed, on a sale of the equity on execution. If he had then redeemed, he had a legal estate, and this would not pass by the deed of the officer, simply because he would have no power to sell it. The tenant is estopped to say that the original debtor, Richmond, paid his debt to Darling and redeemed. It is found that neither Washburn nor Harlow redeemed. But the conveyance from Harlow to Jacob Thompson's daughters was not made till 1832, after the demandants had acquired the legal estate of Darling, and after they had in fact commenced their suit against the tenant in possession.

But if there was no redemption till after 1828, as it is proved there was not, then Darling was the holder of the legal estate created by the first mortgage, when he made his deed to Thompson, and his legal estate, as such mortgagee, passed to Thompson, and, by Thompson's mortgage back, again vested in Darling, and by his assignment afterwards came to the demandants. It is not intimated that either of Thompson's daughters has ever redeemed of the demandants.

What then is relied upon by the tenant, to prove such redemption ? We can perceive nothing but this ; that the production by the tenant, at the trial, of the original note of Richmond to Darling, to secure which the mortgage was given, raises a presumption that it was paid ; and if the note was paid, we must presume that the mortgage was discharged.

Now the most which the production of the note by the tenant would have a tendency to prove, is, the actual payment of it by her, to some holder of it. But even payment of the debt secured by mortgage, after condition broken, especially to one who is not the holder of the mortgaged estate, does not *de facto* discharge the mortgage. Whatever effect, therefore, the fact

Crocker & another *v.* Thompson.

of such a payment might have in equity, on a bill to redeem, it does not disprove the legal title of the demandants.

But without resting the decision upon this principle of law, which might be deemed technical, and not embracing the merits of the case, it may be more satisfactory to examine the circumstances, relied upon as raising the presumption of payment.

In general it may be admitted that the production, by the mortgagor or those claiming under him, of a note secured by mortgage, will raise a presumption, in the absence of all other proof, that it has been paid. But this is a presumption of fact, not of law, and it will be rebutted by any other evidence. If the possession and production of the note can be satisfactorily accounted for, upon any other hypothesis than that of the payment of it to the holder, it will rebut such presumption.

The note in question was the note of Allen Richmond to Thomas Darling, secured by this mortgage. The daughters of Jacob Thompson were under no obligation to pay that note, and had no authority to pay it, except as assignees of the mortgage, and for the purpose of redeeming. But it is impossible to believe that they volunteered to pay the note of a stranger, and for the purpose of redeeming the estate, unless they paid it to a lawful holder of the note and assignee of the mortgage, who could give them a valid discharge upon such payment ; and it is equally incredible, that they should do this, under circumstances so extraordinary, without actually having a valid discharge executed. But it clearly appears that Darling, if he had not foreclosed, held the mortgage undischarged, till 1828 ; and the case assumes, that up to that time he held the note. Neither Washburn nor Harlow redeemed, and there is no evidence, and no pretence, that they paid the note. But they held the equity till 1832, and therefore the mortgage remained in Darling, undischarged, and the notes unpaid, until after Darling had conveyed to Thompson, and Thompson had immediately mortgaged back to Darling. If then the production of the note at the trial is proof of payment, it proves a payment by Thompson's daughters themselves, or some of them, and not by either of their predecessors holding the equity ; and as no transfer of the note by Darling

to any body is shown or suggested, the presumption must go further and prove a payment of the note to Darling. But these women did not acquire the right of redeeming till 1832, after the estate had been transferred by Darling to their father, who lived on the estate, by him mortgaged back to Darling, and by Darling conveyed by assignment to the demandants, and on which an action was then pending by the demandants against their father. The case involves the supposition that the note was paid, by the tenant and her sisters, who were under no obligation to pay it, for the purpose of redeeming, to Darling, who had no right in, and no power over, the estate to be redeemed ; that their only motive could be to obtain a discharge of the mortgage, and none was given, even in form. The improbability is more than enough to rebut any presumption of fact arising from the production of the note.

But there are modes of accounting for the production of this note, supposing all the transactions to be genuine and *bonâ fide* as stated. The case supposes that Darling held this note of Richmond till 1828, fifteen years after it had become due. Now in this long period, there was ample time for Darling to foreclose, by an entry *in pais* and holding three years ; and if he did so, and the estate was equal in value to the note, the note was *de facto* paid by the land, and would become worthless, as the evidence of debt, and might well have been handed over by Darling to Thompson in 1828, when Darling conveyed the premises to Thompson in fee. But in that case, the right of redemption, under which alone the tenant could claim, was gone ; the mortgage from Richmond to Darling became. absolute, and passed, by the mesne conveyances before mentioned, to the demandants.

It seems certain that Darling considered and treated the estate as his own, by conveying it in fee, without reference to the mortgage. But as he had no title originally, but as mortgagee, he must have considered that the mortgage had become absolute by foreclosure, and of course that the debt secured by it was paid. Then if he considered the land as taken in satisfaction of the debt — whether he was right or wrong in the belief that

he had a right to treat it as his own, and convey it in fee — he had no longer any occasion or motive to retain the note ; and on con veying the estate to Thompson, and on taking back a new mort gage for the value, he would naturally give up the note to Thomp son as one of the muniments of this new title. If these notes were then delivered up by Darling to Jacob Thompson, it being proved that the negotiations by which his daughters derive title were conducted by him, as they allege, in their behalf and as their agent, his possession of the note would satisfactorily account for the production of it on this trial, although it had not been paid, or paid only by the land. We are therefore satisfied that the fact is not proved, that this note has been paid by the tenant or her sisters, and it therefore becomes unnecessary to consider whether such presumption of payment would, under the circumstances, warrant a further presumption of the discharge of the mortgage, so as to avail the tenant as a defence to this action.

The discharge purporting to be given by said Jacob Thompson, May 15th 1832, on the margin of the registry, of the said mortgage from Richmond to Darling, can have no effect to give a legal title to the tenant, or turn her right in equity into a legal estate ; for if the conveyance of Darling to him, in 1828, could be construed to be an assignment of the mortgage to him, as it might be, if it was then open and not foreclosed ; yet he immediately mortgaged back to Darling, and had no legal interest in the estate, when he thus attempted to discharge the mortgage. But it tends to show, that he then claimed to be such assignee, and to hold the note in that capacity, and so to account for his possession of it.

In regard to the other part of the demanded premises, the circumstances vary a little, but the result is the same. Jacob Thompson, owning the premises in July 1812, mortgaged the same to Benjamin Parsons in fee, and in December 1814, Parsons assigned this mortgage to the same Thomas Darling. The mortgage was held by Darling till 1828. All the reasoning which applies to the former case applies *à fortiori* to this parcel Thompson was himself the debtor, and upon the case assumed, Darling held his note in 1828. Would he have conveyed the

estate *absolutely to* Thompson himself, the debtor, without payment of the note secured by it ? Or, would Thompson have taken the estate incumbered with the old mortgage, as it must be, if he left the note unpaid, and gave a new mortgage for the value ? We much doubt whether the production of the note in this case raises any presumption of payment by Thompson's daughters. We rather think the presumption is, that when the new mortgage was given, the old note was given up, as being satisfied by the foreclosure of the mortgage. If the tenant insists that in 1828, at the time of the transaction between Darling and Thompson, she, or those under whom she claims, and not her father, had the right to redeem, and so that the payment of the note by him, and the discharge of the mortgage, operated so as to vest the absolute estate in his daughters ; we think the answer is plain, that the deed, then made from Darling to Thompson, does not purport to be the discharge of a mortgage, nor does it manifest any intent of the parties that it shall so operate. It was in fact and in form a deed in fee, and it appears that *eo instanti* Thompson gave back a mortgage in fee to Darling. Both deeds took effect at the same time ; the seizin was but for a moment, and then by the well settled rule of law, the same estate, which was conveyed by Darling to Thompson, was reconveyed by Thompson to Darling. If this was an absolute estate, it was because the old mortgage was foreclosed and vested an absolute estate in Darling, and then the equity of redemption under that mortgage was gone. If it was a redeemable estate, then the same conditional estate revested in Darling, and passed through his grantees to the demandants. It would, therefore, be as much a violation of the rules of law, as of the plain and manifest intentions of the parties, so to construe this transaction, as to give any effect to one of these deeds which is not given to the other. It revested in Darling the same estate which he had before, whether absolute under the mortgage foreclosed, or redeemable, is holding under a mortgage still open. In the last case, the most favorable view for the tenant is, that the mortgage is still open, and that she has still a right to redeem. But were it so, she could not have a bill in equity to redeem, without paying the

assignees of the mortgage, (who are now the demandants,) the amount of the original mortgage of Thompson ; and in no event can she maintain or defend a real action against the holders of the legal estate, until after an actual redemption.

It therefore becomes unnecessary to examine the numerous objections to the tenant's title, which certainly shows, on the face of it, many infirmities.

*Judgment for the demandants.*